Eugene **UNDERWOOD**, Petitioner,

v.

Lynn **BOMAR**, Warden, Tennessee State Penitentiary, Respondent.

Marvin **HOLBROOK**, Petitioner,

v.

Lynn **BOMAR**, Warden, Tennessee State Penitentiary, Respondent.

Nos. 15656, 15657.

United States Court of Appeals Sixth Circuit.

Aug. 19, 1964.

**784**

Eugene Underwood, Nashville, Tenn., in pro. per.

Marvin Holbrook, Nashville, Tenn., in pro. per.

Henry C. Foutch, Asst. Atty. Gen. of Tennessee, Nashville, Tenn., George F. McCanless, Atty. Gen. of Tennessee, for appellee.

Before WEICK, Chief Judge, and PHILLIPS and EDWARDS, Circuit Judges.

PHILLIPS, Circuit Judge.

Appellants, each of whom is serving a 99-year sentence in the Tennessee state penitentiary, have appealed from the order of the District Court denying their petitions for writs of habeas corpus. Both appellants fully exhausted their remedies in the state courts. The opinion of the Supreme Court of Tennessee in appellant Holbrook's case is reported under the style State ex rel. Holbrook v. Bomar, Warden, 211 Tenn. 243, 364 S.W. 2d 887.

The two petitions for habeas corpus raised substantially identical questions and the cases were consolidated for trial in the District Court.

Appellants, together with a third party named Oscar Gallimore, were indicted jointly in the Criminal Court for Knox County, Tennessee, and charged with rape and robbery with a deadly weapon. The crime involved a nighttime robbery of a young girl and her date in a Knoxville public park in October, 1955. The young man was held at point of a knife by one of the assailants, while the girl was raped by one of the other men. The knife also was used in effecting the robbery.

Appellants were arraigned in the state trial court on November 28, 1955, at which time both entered pleas of "not guilty." At the time of arraignment the trial judge inquired whether or not appellants had counsel to represent them. Appellant Holbrook stated that he would not need to have counsel appointed for him and that he had or would have his own personally-employed counsel. Appellant Underwood also stated that he expected to have his own personally-employed counsel. The trial was set for December 12, 1955. The record is clear that neither appellant at any time claimed to be indigent, and neither appellant made any request to the state trial court for the appointment of counsel.

A reputable Knoxville attorney was employed by Holbrook. On Saturday December 10, 1955, two days before the trial, the state trial judge made further inquiry of appellant Underwood as to whether or not he had employed counsel, and upon learning that no counsel had been retained, the court on its own

volition and without any application from defendants appointed two capable and experienced Knoxville attorneys to represent Underwood and his co-defendant, Gallimore.

The privately employed attorney who represented Holbrook in the state court testified before the District Court to the effect that Holbrook suggested to his attorney that he, Holbrook, offer to appear as a witness for the State against his two co-defendants if the possibility of a death sentence thereby could be avoided; and that Holbrook's mother wrote a letter to his attorney "asking that I go down and talk to him and make arrangements for him to go down to the Attorney General's office separate and apart from anyone else." The attorney further testified that, at the request of Holbrook, he did confer with the Attorney General, who indicated to his satisfaction that, if Holbrook would testify as a witness for the State, he would not be put on trial for rape and the death sentence would not be demanded as to Holbrook.

The two court-appointed attorneys who represented Underwood in the state trial court also testified as witnesses in the District Court. Both attorneys stated that they made a diligent effort during the weekend before the trial to find a witness or witnesses to the crime, but were unsuccessful; and that when Underwood learned on the morning of the trial that Holbrook had decided to testify as a witness against his two co-defendants, Underwood instructed his attorneys to try to make a settlement which would keep him out of the electric chair. One of the attorneys expressly testified as follows: "The only thing that Underwood had asked us was to keep him out of the electric chair—if we could get 99 years, take it." These attorneys

testified further that the Attorney General at first refused to consider any settlement, saying that he was going to try to get the death penalty for Underwood and Gallimore; that the young girl who had been raped and robbed then told the Attorney General that "she had conscientious objections to the death penalty"; and thereafter, in a conference between Underwood, Gallimore, members of their families and their court-appointed attorneys, Underwood and Gallimore decided to plead guilty to the charge of armed robbery upon the assurance that they would not be prosecuted for rape, that the death sentence would not be sought against them, and that they would get a sentence of 99 years for armed robbery, all of which was agreed to by the Attorney General. Thereupon both appellants, along with Gallimore, changed their pleas from "not guilty" to "guilty" to the charge of armed robbery. The charge of rape thereupon was dismissed, and all three defendants were found guilty of robbery with a dangerous weapon and sentenced by the jury for terms of 99 years under T.C.A. § 39-3901.[1]

The proceedings in the state court were transcribed by a court reporter and the transcript was introduced in evidence in the District Court.

A lengthy hearing was conducted in the District Court extending over a period of two days, including testimony by both appellants, the Judge of the Criminal Court of Knox County who presided at the trial of appellants, the District Attorney General of Knox County and his Assistant who prosecuted the case, the attorney who represented Holbrook as personally-employed counsel, and the two attorneys who represented Underwood and Gallimore as court-appointed counsel.

1. "§ 39-3901. Robbery-Penalty.—Robbery is the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear. Every person convicted of the crime of robbery shall be imprisoned in the penitentiary not less than five (5) nor more than fifteen (15) years; provided, that if the robbery be accomplished by the use of a deadly weapon the punishment shall be death by electrocution, or the jury may commute the punishment to imprisonment for life or for any period of time not less than ten (10) years."

Both appellants were represented vigorously and capably in the District Court by a court-appointed attorney of the Nashville Bar.

2. At the conclusion of the hearing, the District Judge made the following findings from the bench:

"A motion was made in this case after the first hearing on the part of the respondent to be permitted to call additional witnesses, and we have heard here today a complete rehash of this trial in Knoxville from the Trial Judge, from the Attorney General, the Court-appointed Counsel, and the employed Counsel, all of whom have given the Court a very clear picture of the situation.

"I do not think there is any question at all that these defendants were given a fair trial in every respect. They were represented by competent counsel from the beginning to the end, and I can see no basis for concluding in any sense whatever that their constitutional rights were not fully safeguarded at all times.

"The only possible point that might have had some substance to it was that they were not given sufficient time to prepare for trial, but there is no inflexible rule in this respect. There is no arbitrary time limit involved in these situations. Two hours might be sufficient in one case. It might be wholly inadequate in another. It all depends on the facts and circumstances. These competent counsel investigated the situation by interviewing their clients and having access to the State's evidence, and the attorney for one of the petitioners made a thorough investigation in an effort to find witnesses, but was unable to do so. The petitioners themselves could suggest no witnesses. They could suggest no defense that required any time to prepare. So I do not think there is any substance to this point that they were not given sufficient time.

"As to a copy of the indictment, of course there is no strict rule under the Fourteenth Amendment that a copy of the indictment be given to a defendant as long as he is fully aware of the charge which is brought against him. There is no doubt, of course, in this case that these defendants did know exactly what they were charged with. I think that is abundantly clear.

"The point was made that they were not furnished a list of the jurors, but there is no proof that they requested a list of the jurors that I have heard. Even so, I am not prepared to say that failure to furnish a list of jurors would

District Judge William E. Miller denied the applications for writs of habeas corpus and dismissed the petitions.[2]

necessarily be a denial of due process of law.

"As to systematic exclusion of Negroes from the jury, there is no proof to support this charge in this case. In fact, the proof is to the contrary.

"As to the alleged coercion of the petitioners to enter pleas of guilty, this charge is not supported by the evidence. The proof here shows that these statements were given freely, willingly and voluntarily without any restraint, coercion, promises or threats of any kind.

"It is a rather strange proceeding that we are engaged in here today where a federal court, about eight years after a conviction in a state court, is required to hear anew the proceedings which took place in the state court. The Supreme Court of the United States, however, has intimated in recent opinions that where charges are made—as they have been made in this particular case—which involve questions of fact which might lead to a denial of a fair trial, the federal court must go into it and determine the truth of the matter. And that is the reason we are here.

"It imposes a hardship—in many instances—on the state officers involved to bring them this distance away to give their testimony, but they have done it in this case. They have cooperated with the Court fully and freely, and the Court appreciates that fact very much.

\* \* \* \* \*

"And I believe justice was done in this particular case. I have no doubt about it in my mind.

"So I will deny the application for habeas corpus.

"I wish to commend the attorney representing these petitioners who was appointed by the Court. You have represented them very fairly, ably and competently; and you have done as good a job for them as could possibly have been done.

"The petitioners have the right to appeal my decision to the Court of Appeals, and I request Court-appointed counsel to advise these petitioners as to their rights in regard to an appeal and as to the steps that must be taken in order to obtain an appeal."

The District Court made formal findings of fact to the same effect in the order denying the writ.

All of the District Court's findings of fact as set forth in the margin are supported by substantial evidence.

In this court appellants urge (1) that their constitutional rights were violated because they were not represented by counsel when they pleaded "not guilty" at the arraignment; (2) that they were denied adequate representation because the two attorneys for Underwood were not appointed by the state trial judge until two days before the trial and did not have adequate time to prepare for their defense; (3) that they were convicted under a void indictment; and (4) that they intended to plead guilty to simple robbery and were not aware that they were pleading guilty to armed robbery.

We find that none of these contentions have merit.

■ On the question that appellants were not represented by counsel at the time they pleaded "not guilty" at their arraignment, the facts of the instant case are clearly distinguishable from White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, Hamilton v. Alabama, 368 U.S. 52 and Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, relied upon by petitioners. We do not understand these cases to hold that there is a denial of the constitutional right of a prisoner to have the assistance of counsel for his defense when, as in the instant case, the appointment of counsel was suggested by the trial judge at the time of arraignment and not accepted by appellants. Here the trial judge inquired of both appellants at the arraignment proceeding whether or not they had counsel to represent them. Holbrook stated that he had or would have his own personally employed counsel and thereafter was represented by his own counsel. Underwood stated that he expected to have his own counsel. Thereafter Underwood's family undertook to employ an attorney of their choice and proposed to pay him $1,000 for his services. This attorney declined to accept employment, but the trial judge thereafter appointed him to represent Underwood and Gallimore and he served as court-appointed counsel without compensation. In this case there is no showing of indigency and it affirmatively appears that appellants did not request appointment of counsel at any stage of the proceeding in the state court. Further, it does not appear that appellants waived any constitutional rights or were prejudiced in any way when they pleaded "not guilty" at arraignment.

■ As to the question of the timeliness of the appointment of counsel, it is clear that Holbrook employed and was represented by a competent attorney of his own selection; that Underwood never requested appointment of counsel; and that the trial court on his own motion appointed two experienced and competent attorneys to represent Underwood. There is no doubt that Holbrook's attorney was employed a sufficient time ahead of the trial to prepare adequately for his defense. The two court-appointed attorneys for Underwood testified that they spent the weekend before the trial in an unsuccessful effort to find a witness or witnesses to the crime; that Underwood and Gallimore and their families were contacted and they were not able to furnish the names of any witnesses other than the three defendants and their two victims; and that one of the attorneys visited the scene of the crime on Sunday afternoon in an unsuccessful search for evidence. The state trial judge testified that, on the morning of the trial, one of Underwood's attorneys "told me that he had hunted all Saturday afternoon and Sunday for witnesses and couldn't find any for his defense. He said: 'I'm as ready now as I will ever be'." One of the attorneys testified that: "We did just as much as we possibly could have done if we had had a month." The other testified that:

"When we got there on Monday morning and investigated the State's case and saw what was taking place, and after conferring with my co-counsel in it and learning all the

788

facts as we did, we determined that additional time would not avail us anything and that—— Right now, I am firmly convinced as I was then that if we had had weeks more, the result would have been the same."

Both attorneys stated that they had adequate time to prepare the case and did not seek a continuance.

We find the contention of appellants that they were not adequately and effectively represented by counsel to be without merit. O'Malley v. United States, 285 F.2d 733 (C.A. 6); Ray v. United States, 197 F.2d 268 (C.A. 8); United States v. Wight, 176 F.2d 376 (C.A. 2); Hendrickson v. Overlade, 131 F.Supp. 561 (N.D.Ind.).

 The indictment under which appellants were convicted charged them with robbery "with a deadly weapon, to wit: a knife" and also contained a separate charge of simple robbery. Appellants were sentenced upon the charge of robbery with a deadly weapon. Appellants challenge the validity of the indictments. It is well settled that the sufficiency of an indictment cannot be reviewed in habeas corpus proceedings, Knewel v. Egan, 268 U.S. 442, 446, 45 S.Ct. 522, 69 L.Ed. 1036. While it has been held that there may be a review if the indictment is so fatally defective as to deprive the court of jurisdiction, McCoy v. Pescor, 145 F.2d 260 (C.A. 8), cert. denied 324 U.S. 868, 65 S.Ct. 911, 89 L.Ed. 1423, rehearing denied, 325 U.S. 891, 65 S.Ct. 1083, 89 L.Ed. 2004; Knight v. Hudspeth, 112 F.2d 137 (C.A. 10), cert. denied 311 U.S. 681, 61 S.Ct. 62, 85 L.Ed. 439, we find no such defect in the indictment in this case. Cf. Baker v. State, 203 Tenn. 574, 315 S.W.2d 5, Throneberry v. Resolute Ins. Co., 206 Tenn. 216, 332 S.W.2d 227.

 Finally, the evidence is conclusive that appellants were fully aware of the fact that they were pleading guilty to the offense of robbery with a deadly weapon and were advised of the nature of their plea by the state trial judge and by their own counsel. As stated by the state trial judge in his testimony in the District Court: "They understood what they were doing."

The judgment of the District Court is affirmed.