Russell MOSLEY, Appellant,

v.

A. L. DUTTON, Warden, Georgia State Prison, Appellee.

No. 23310.

United States Court of Appeals
Fifth Circuit.

Oct. 12, 1966.

Rehearing Denied Nov. 4, 1966.

---

Barnee Baxter, Augusta, Ga. (Court appointed), for appellant.

Arthur K. Bolton, Atty. Gen., Joel M. Feldman, Atty., Atlanta, Ga., for appellee.

Before RIVES, BELL and THORNBERRY, Circuit Judges.

RIVES, Circuit Judge:

This appeal is from the district court's denial of a writ of habeas corpus to a prisoner of the State of Georgia. The application alleged and the answer admitted exhaustion of available State remedies.[1] The applicant is serving a term of life imprisonment imposed upon his conviction of murder by castration. The district court denied the writ after a hearing in which the applicant was represented by appointed counsel. The applicant and the respondent testified orally, and the other evidence was taken by deposition and by affidavit.[2] The district court found the facts against the applicant as to most of the grounds specifically alleged in his pro se application.[3] There was no more particular findings of facts as to other grounds, either alleged in the application or tried by consent of the parties and, hence, treated as if raised in the pleadings.[4]

The only evidence in the record as to the events which occurred prior to April 9, 1962, when counsel was appointed to defend the applicant, comes from the sworn pro se application and from the testimony of the applicant himself. According to the application and the applicant's testimony, he was arrested on December 6, 1961 on a warrant charging murder and was placed in the Emanuel County Jail at Swainsboro, Georgia. He was held incommunicado in that jail from December 6, 1961 until either the 24th or 25th day of December, 1961, when his brother was permitted to visit him for a period of thirty minutes. On or about January 1, 1962, he was transferred to the Jefferson County Jail at Louisville, Georgia, and, on or about February 1, 1962, he was transferred to the Effingham County Jail, Springfield, Georgia. During the period from January 1, 1962 to April 4, 1962, the applicant was held incommunicado. On April 8, 1962, the applicant was returned to the Emanuel County Jail, Swainsboro, Georgia, and on April 9, 1962, Mr. Sidney B. Shepherd was appointed to represent the applicant. At no time prior to the appointment of Mr. Shepherd was the applicant advised of his right to be represented by counsel. Three days after that appointment, the applicant was tried and convicted of murder and sentenced to imprisonment for life. From the time of the appointment of Mr. Shepherd, the applicant's testimony is controverted by that of Mr. Shepherd with the possible exception of the claimed frustration of the applicant's right of appeal from his judgment of conviction.

No appeal was prosecuted. The application alleged:

"On, or about, the 17th day of April 1962, petitioner was transferred to the Georgia State Prison, Reidsville, Georgia. On, or about, the 27th day of

---

1. See 28 U.S.C.A. § 2254.

2. As permitted by 28 U.S.C.A. § 2246.

3. Stated in the order of the district court as follows:
   "The Petitioner alleges that he was never afforded a preliminary hearing; de-

nial of effective assistance of counsel; denial of compulsory process for obtaining witnesses; adjudged guilty by traverse jury which was illegally impaneled and a general denial of his constitutional rights."

4. See Rule 15(b), Fed.R.Civ.P.

April, 1962, petitioner wrote the Emanuel Superior Court, giving notice of intent to appeal, pro se. On, or about, the 11th day of May, 1962, petitioner filed a Motion for New Trial with the Emanuel Superior Court. Said letter of intent to appeal, and, said Motion for New Trial, have never been acknowledged by the court, nor, has this court ever afforded petitioner any judicial review of State v. Mosley, supra [Emanuel Superior Court, Middle Judicial Circuit of Georgia, April 12, 1962]."

The applicant testified orally that after the jury had been out forty-five minutes to an hour, it returned to ask the Judge "could they recommend mercy in the case?", and at that point, "I turned to my lawyer, Mr. Sheppard [sic], and I told him, I said: 'Mr. Sheppard [sic], don't you think all the people down on the front here in the court know what I am going to get? I am going to receive a life sentence. I want the case appealed.' He said: 'I will see you at the jail tomorrow and arrange for an appeal.' I have never seen Mr. Sheppard [sic] since, and it was about a year and a half before I ever heard of him until I certified the letter to him."

On the matter of appeal, Mr. Shepherd testified by deposition prior to the hearing, and, hence, there was no occasion for him to deny the applicant's testimony. Mr. Shepherd's testimony as to appeal was confined to the following:

"Immediately after the trial, I discussed the case with several members of the Bar who had heard the evidence, and it was a consensus of opinion that there had been no errors committed in the admission of evidence or in the judge's charge. It is my considered opinion, based on my conversation with the other lawyers, that an appeal or motion for a new trial would have been futile." [5]

Mr. Shepherd had graduated from the Law School of Emory University in June of 1957, after which he had passed the Georgia State Bar examination. He had then been a Deputy Legislative Counsel for the State of Georgia until November of 1961, at which time he had entered the practice of law in Swainsboro, Georgia.

Mr. Shepherd testified by deposition that:

" * * * upon my appointment as such, I proceeded with the preliminary investigation in the discussion of the case with law enforcement officers and any other witnesses or persons who knew, either directly or indirectly, of the circumstances surrounding this case.

* * * * * *

" * * * as soon as I was appointed, I proceeded with the investigation of the case, talked with all of the witnesses whose names the Defendant, Russell Mosley had furnished me, together with all of the witnesses for the State. I went to the scene and made an investigation and discussed the case with the Defendant on two or three occasions.

* * * * * *

"Q. Were any witnesses summoned on behalf of the defense? If not, was it your best judgment in handling the case that no witnesses be summoned?

"A. Yes, there were witnesses summoned on behalf of the Defendant, namely: Jack Armstrong, Garnette Lindsey, Wilson Morris, H. R. Mosley, Horrace Strange, Peyton Youmans, Sonny Mills, Bobby Horne, Carl Moore, Carry Morris, Maurice Jackson, B. L. Williamson and Avis Williamson.

"Q. What were your trial tactics as far as using certain witnesses were concerned?

"A. As stated previously, I had talked to each of these witnesses relative to the circumstances and events

5. As to the remedy for frustration of the defendant's right of appeal, see Pate v. Holman, Warden, 5 Cir. 1965, 341 F.2d 764, modified on rehearing, 343 F.2d 546; compare Lyles v. United States, 5 Cir. 1965, 341 F.2d 917; Camp v. United States, 5 Cir. 1965, 352 F.2d 800.

about which they had knowledge surrounding this offense for which Russell Mosley was accused. After talking with them and after the State had presented its case and put its witnesses on the stand, and after conferring with my law partner, Mr. George L. Smith, II, who assisted me in the trial of this case, it was our considered opinion that the use of the witnesses which we had summoned on behalf of the Defendant would not be beneficial in the trial of his case.

\* \* \* \* \* \*

"\* \* \* after hearing the evidence presented by the State, and particularly the confession of M. F. Mosley, a Co-defendant, it was mine, together with my partner's opinion, that the Defendant's unsworn statement would be of more benefit to him than to use the witnesses which had been summoned in his behalf." [6]

■■ It was, of course, the duty of the Georgia state court to assign counsel for the applicant as a necessary requisite of due process of law, "and that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." Powell v. State of Alabama, 1932, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158. Whether the applicant has been denied the benefit of assistance of counsel guaranteed to him by the Fourteenth Amendment depends upon "the particular circumstances" appearing in the record. Avery v. State of Alabama, 1940, 308 U.S. 444, 448, 60 S.Ct. 321, 84 L.Ed. 377; Underwood v. Bomar, 6 Cir. 1964, 335 F.2d 783, 786, n. 2.

"The particular circumstances," according to the present record, include the following: applicant was held incommunicado in several jails for the four months following his arrest; then he was furnished counsel; three days later he was tried, convicted of murder, and sentenced to life imprisonment; apparently no witness was offered in his defense; apparently one of the strongest items of evidence was the "confession" of a codefendant, and how that became admissible against the applicant does not appear; the applicant requested an appeal but no appeal was prosecuted from his judgment of conviction.

Those circumstances, without more, were, in our opinion, sufficient to shift the burden to the respondent to introduce countervailing evidence. We fully agree with the appellee in his reliance upon Bishop v. United States, 1955, 96 U.S. App.D.C. 117, 223 F.2d 582, 584, to the effect that, "[t]he competence of counsel is demonstrated by action rather than by inference." Unfortunately, however, we cannot observe that action because we are not furnished with the record and transcript of testimony of the State criminal trial. The applicant's proof was sufficient, at least, to shift to the respondent the burden of introducing that record and transcript or its reasonable equivalent.

■ Finally, at the conclusion of the testimony in the district court, the respondent's counsel consented to the introduction in evidence by the applicant of two affidavits, one of William J. Pierce, Jr., and the other of Albert Mills. Those affidavits, unless rebutted, would prove that the State knowingly introduced perjured testimony of Pierce against the applicant, and, by promises of reward and threats, prevented Mills from giving material testimony in favor of the applicant. Since those issues were injected by the consent of the parties, they must be treated as if they had been raised in the pleadings.[7] It may be, as is so often the case, that such extreme charges can be refuted but they cannot

6. We are not informed as to how the "confession" of M. F. Mosley, a co-defendant, became admissible against the defendant Russell Mosley notwithstanding his Sixth Amendment right to be confronted with the witnesses against him.

Perhaps M. F. Mosley turned state's evidence, and testified to his "confession," but without more than the record shows that is uncertain.

7. Rule 15(b), Fed.R.Civ.P.

be simply ignored. The respondent bore the burden of going forward with the evidence to refute the testimony of these two witnesses.

The judgment is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.