### ED. BLUMENTHAL V. THE STATE.

No. 8306.  Delivered January 7, 1925.

No motion for rehearing filed.

**1.—Rape—Witness—Prosecutrix—Coercion of—Denounced.**

The circumstances of this case are indicative of the fact that the prosecuting witness, Exa Burch, in giving the incriminatory testimony was influenced, by threats and coercion. The courts have often condemned any efforts, whether successful or not, to intimidate a witness against the accused, or to place obstacles in the way of his giving testimony favorable to the State, and there are instances of statutory enactments characterizing such conduct as criminal. Underhill on Crim. Evidence, 3d Ed., Sec. 401, and notes.

**2.—Same—Trial Judge—Should Be Impartial.**

The law of our State contemplates as an incident of a fair trial, that the judge presiding shall govern his conduct and that of the trial in such a manner that his opinion of the merits of the case, or the credibility of the witnesses shall not be made known to the jury. Transgression of this rule, when calculated to prejudice the case of the accused, will demand a reversal of the judgment.

**3.—Same—Argument of Counsel—Objection To—How Preserved.**

An objection presented to argument of counsel, comes too late, when presented for the first time in a motion for a new trial. Objection should be made at the time, and efforts made to obviate its harmful effect.

Appeal from the District Court of Taylor County.  Tried below before the Hon. W. R. Ely.

Appeal from a conviction of rape of female under the age of consent; penalty, fifteen years in the penitentiary.

*Cunningham & Oliver, A. A. Clark,* and *Cearley & Pearce,* for appellant.

*M. S. Long,* District Attorney, of Abilene, *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—The offense is rape; punishment fixed at confinement in the penitentiary for a period of fifteen years.

·According to the State's theory, Exa Burch, a girl under fifteen years of age, while in a picture show in the town of Cisco, met the appellant and by arrangement the two went on the railroad train to Baird, the county seat of the adjoining county. Together they went to a hotel, the girl registered and the two went to the same room. The lady in charge of the hotel admonished them that they would not occupy the same room whereupon the girl, upon the suggestion of the appellant, went to another hotel where she registered and was assigned a room. A short time later the appellant appeared at the hotel last mentioned, entered the room assigned to the girl and stayed a short time during which he had carnal intercourse with her. She was, upon the same day, taken in charge by the sheriff and admitted to him that the appellant had had carnal knowledge of her. She later reiterated that statement to the grand jury and upon the present trial. There was corroborative evidence to the point that the appellant and the prosecutrix were together at the places named by her.

A physical examination was made by a doctor which revealed the hymen was gone and the lips of the vagina discolored and swollen; that the vagina for a girl of her supposed age was uncommonly large and abnormally developed. Whether this "over-development," as the doctor expressed it, was due to frequent sexual intercourse the doctor declined to express an opinion but said that such might be the cause of it.

Upon the calling of the case for trial the State's attorney declined to announce ready, and after a private conversation with the presiding judge, the special veniremen were directed to retire from the court room and remain until called. The prosecutrix, Exa Burch, was then sworn as though a witness and interrogated at length. It took the nature of a rigid cross-examination by the presiding judge and resulted in the repeated denial by the prosecutrix of the truth of her former statements to the effect that the appellant had had carnal knowledge of her and the insistence by her that he had had no such relation. She also declared that she was above fifteen years of age; that the apparent statements in the Bible to the contrary were inaccurate in that erasures had been made in order that the age of her brother, who was subject to draft in the army, might not be revealed. She explained that her statements to the sheriff were coerced by the

threat to place her in jail and that under the same influence she re-iterated the statement to the grand jury. In the examination mentioned she told the presiding judge that soon after her release from custody she had told her two brothers and her father that the appellant had had no improper relations with her and stated in reply to inquiries that her father had told her to tell the truth and for that reason she was, on the present occasion, refusing to inculpate the appellant. The examination is too long to permit its reproduction in full. Among the questions asked by the court and the answers of the girl are the following:

"Q. You remember you were down there in the jail and you remember having a conversation with Judge Crawford, the tall gentleman, and Benny Russell and myself?

"A. Yes, sir; I remember it.

"Q. Do you remember Judge Crawford stating, now Exa, I am going to ask you something delicate and I want you to tell me the truth, and that if you told a story you might send a man to the penitentiary and that he wanted nothing but the truth, just like God was looking down into your heart and somebody's liberty was depending on what you said, and he said he wanted you to tell the truth and he asked you if this man over there did anything wrong to you; you remember him asking you that?

"A. Yes, sir.

"Q. Do you remember what you told him?

"A. I told him—yes, sir.

"Q. Was that true?

"A. No, sir; that was not true.

"Q. If it was not true, why did you tell facts—I just want you to be frank with me, Exa, I do want you to tell the truth.

"Q. You were before the grand jury; did you tell them he did anything wrong to you; the grand, jury, the twelve men in the room where the District Attorney was, Mr. Long and Benny Russell were present; did you tell them the same thing that you told Judge Crawford?

"A. Yes, sir.

"Q. That was a short time after you were with him in your room at the hotel; is what you told the grand jury true or false?

"A. No, sir. It was not true.

"Q. Why did you tell the grand jury a falsehood?

"A. Mr. Bray made me tell it.

"Q. You told Judge Crawford that this man over there did something wrong to you, and now you say that you were not telling the truth; that that was not the truth; why did you tell Judge Crawford something that was not true; why did you tell Judge Crawford?

(No answer.)

"Q. Did Mr. Bray make you tell that?

"A. Mr. Bray made me tell it all; all of it at first and so I told every one of them the same thing.

"Q. What did Mr. Bray tell you; just tell me what he did tell you. I want to know just what the sheriff did; Mr. Bray is the sheriff at Baird, isn't he? He is the acting sheriff down there; how did he make you tell what you told?

"A. He was going to put me in jail if I did not tell them. He said he knowed that man did do something to me and there was none of it so.

"Q. Did you ever tell this man over here; this man, Mr. Pearce (attorney for appellant), that he didn't do anything to you?

"A. Yes, sir; I told him.

"Q. You have talked to him several times; tell me what conversation you have had with Mr. Pearce.

"(No answer.)

"Q. Why do you look at him every time I ask you anything; what conversation have you had with him; tell me what you talked to him about?

"(No answer.)

"Q. Has anybody told you to tell that that was false? that you had been telling at Baird; has anybody told you to change your story about this matter?

"A. No, sir.

"Q. Why did you tell Benny Russell (County Attorney) you were thirteen; why did you tell him you were thirteen; can you tell me why; you do not know why you told Benny this man mistreated you; don't you?

"A. Yes, sir.

"Q. Why did you tell Benny that; why did you tell him that?

"A. Because Mr. Bray said he wanted me to tell them all the same thing. That's the reason I told him.

"Q. Don't you know that Mr. Bray did not make you do anything of the kind; don't you know he did not make you tell that story?

"A. Yes, sir; Mr. Bray did; he just wanted to send that Jew to the penitentiary for nothing. He just wanted me to tell a whole pack of lies.

"Q. Don't you know that Mr. Bray is inexperienced as an officer and that he is a high class gentleman and that he did not do anything of the kind and that he would not purposely do anybody an injustice; don't you know he is a man that bears that kind of a reputation?

"A. He may be but he said that."

At this juncture, under instruction from the court, the sheriff took the girl into a room in the court house. The father of the prosecutrix was present as a witness for the defendant. An oath was administered to him and he was interrogated by the judge with reference to the age of his daughter and the alleged erasures in the Bible.

Upon his failing to disclose facts contradictory to the statements of his daughter, the father was sent to jail where he was kept until after the close of the trial. Subsequently, Exa Burch was again brought before the presiding judge and counsel for the appellant was permitted to ask her questions whereupon she identified the written affidavit made by her in the City of Dallas, witnessed by her father and stepmother and verified by the notary who took her affidavit in which written statement she declared that the appellant had not had carnal knowledge of her and that her statements to the contrary were untrue. In the course of this examination she was asked by the appellant's counsel the following questions and made the following answers:

"Q. Now, little girl, you are under oath and under the protection of the court here. Did the defendant, Ed Blumenthal, have sexual intercourse with you?

"The Court: Think about that question. You have been under oath before.

"Q. (By Counsel for Defendant): Did the defendant, Ed Blumenthal, have intercourse with you at Baird?

"A. No, sir.

"Did he try to have intercourse with you?

"A. No, sir; he did not.

"Q. Did he try to have intercourse with you?

"A. No, sir."

Immediately thereafter she was, under the direction of the presiding judge, sent back into the anteroom in the court house, and in the absence of the appellant interviewed by counsel for the State and the District Judge and told by them that she should tell the truth. After the interview she was taken to the jail. Subsequent to these proceedings the State announced ready for trial and placed the prosecutrix upon the witness stand. She testified that the appellant did have intercourse with her upon the occasion in question and that her age was then thirteen years. She appeared angry and asked the appellant's counsel why her father was in jail.

In her cross-examination upon the trial of the previous contradictory transactions of which notice has been here taken and her various conflicting statements were made known to the jury by her admissions and otherwise. Her testimony, both as direct and cross-examination, reflects a complete change of front from that given during her examination in the presence of the court preliminary to the trial. The court caused to be attached the stenographer's notes showing, he says, in the qualification, the details of the matters complained of in the bill. The notes attached are embraced in about fifty pages of the record and show the direct and cross-examination of the prosecutrix in the preliminary examination before the district judge and the examination of the father of the prosecutrix. It appears from the statement of facts that the prosecutrix made out of court many

statements in conflict with her testimony given upon the trial. This is revealed by her brother and stepmother and in the written affidavit made by the prosecutrix at Dallas. Evidence was introduced by the appellant showing the circumstances attending the making of the affidavit at Dallas the purport of which testimony was to show that the nature of the affidavit was voluntary. The stepmother of the prosecutrix gave testimony indicating that the age of the prosecutrix was fifteen years at the time of the alleged offense. There was testimony to the effect that the prosecutrix had been in the habit of frequenting picture shows and engaging in indiscreet and forward conduct, including writing letters to men.

The written statement, verified by the affidavit of the prosecutrix, was introduced in evidence. According to it, without previous acquaintance, she happened in a picture show to sit next to the appellant. He engaged in conversation with him and told him of trouble at home. She said she was going to run away to Baird and find a place in some home. Appellant told her she should go back and endeavor to get along with her parents. She said she would not do this but would go to Baird even if she had to walk. Appellant then told her that if such were her intentions, he would give her a dollar with which to buy a ticket to Baird. While on the train, he advised her to return to her home and when she was assigned a room in the first hotel to which she went in Baird, appellant entered the room and talked with her some five or ten minutes, and after brushing his clothes, went down stairs. The lady in charge of the hotel said that the two must not occupy the same room. In this the appellant acquiesced and again advised the prosecutrix to go home, and this she agreed to do. He told her to go to another hotel and gave her money with which to pay for her lodging. After she had been assigned a room in the other hotel, appellant entered and talked to her about thirty minutes, stating that he regretted giving her money to go to Baird and insisted that she carry into effect her purpose to go home; that trouble would result to her by staying in a strange town. Upon leaving the room he promised to conduct her to the train which left about midnight. She left her room and went to a picture show where she was taken in custody by the sheriff and another officer, who stated that they wanted to see her at the jail. She was frightened because she thought they were going to arrest her for running away from home. Answering their inquiry, she told them that she was fifteen years of age. To this they expressed doubt, stating that unless she corrected the statement, she would be put in jail. Because of this threat, she said she was twelve years of age. The officer then, in a rough manner, pointed his finger at her and said that he knew she had gone to bed with the appellant. This she denied, but was told by the officer that he knew better; that if she persisted in her denial, she would be put in jail. Because of this threat she admitted to the sheriff that the

appellant had had intercourse with her. According to her written statement, these matters were not true, but that she told them because of her fright; that as a matter of fact, the appellant had not had intercourse with her. The sheriff testified and denied that he frightened the prosecutrix.

The courts have often condemned any effort, whether successful or not, to intimidate a witness against the accused or to place obstacles in the way of his giving testimony favorable to the State; and there are instances of statutory enactments characterizing such conduct as criminal. See Underhill on Criminal Evidence, 3rd Ed., Sec. 401, and notes, from which the following quotation is taken:

"The rules and principles laid down above are usually invoked in cases where private persons attempt to influence witnesses who were called to testify against the accused. They are, of course, equally applicable where police officials or public prosecuting officers practice similar methods of intimidation upon the witness for the accused. In any event it is extremely improper to allow a public prosecutor to endeavor to dissuade witnesses for the accused from appearing and testifying even though he may have the best of grounds to believe that they are unreliable and that they will injure themselves."·

See Hamilton v. State, 68 Texas Crim. Rep., 419; Venable v. State, 84 Texas Crim. Rep., 354.

After the prosecutrix finally concluded to and did give testimony inculpating the appellant, her cross-examination revealed many circumstances under which she had made statements contradictory of her present testimony, including those made to the district judge.

The appellant, by exception taken at the time and urged here, complains of the measures taken with reference to Exa Burch on the day · the trial began and antecedent to the announcement of ready by State's counsel and insists that·they were irregular, unauthorized and of a character calculated to intimidate the witness and render her testimony upon the trial so improbable that the verdict of conviction should be annulled. That the procedure adopted was irregular cannot be denied. The witness was not under indictment nor charged with any offense. The appellant was already under indictment. The court was not, as a magistrate, investigating the commission of 'the crime. In administering the oath to the witness, in holding her in custody, in putting the witness in custody, and in incarcerating her father, the court, so far as we are aware, was acting under no statutory authority nor recognized rule of practice. Its object doubtless was to develop·what the judge believed to be the truth. The officers of the State believed that the crime had been committed. The witness, Exa Burch, in several of her sworn statements insisted that no crime had been committed; that her admissions to that effect were brought about by putting her under restraint and in fear of incarceration in jail. According to some of her previous declarations inculpating the appellant or showing that any

crime had been committed. The purpose apparently was to bring her present negative testimony in accord with her previous declarations inculpating the appellant. This was finally accomplished. · Whether due to a conscientious change of heart or the circumstances under which she was placed and influence brought to bear upon her cannot be determined. It does show, however, that when the time for trial arrived, the principal and essential witness for the prosecution was ready to give testimony favorable to the appellant and was determined in such degree that it could not be shaken by the continued public examination by the judge when she believed herself under oath and that she remained steadfast in that determination until she was taken in custody, held in custody and in the absence of the appellant, interviewed by the judge and the prosecuting officers, and had observed her father who was confined in jail.

Without the testimony of Exa Burch, the State's case would fail. Corroboration is not essential to a conviction. Gazley v. State, 17 Texas Crim. App. 277. The case is of a character, however, "requiring special scrutiny by the jury and a careful weighing of the evidence, with all remote and near circumstances and probabilities." Gazley v. State, supra. The law does demand, however, that the conviction be the result of a fair trial in which there is brought before the jury, in a legal manner, competent evidence of a nature and quantity such as would uphold the conclusion of the jury that beyond a reasonable doubt the offense charged had been committed by the accused. The evidence of the prosecutrix is self-contradictory to an unusual degree. In a similar case this court said:

"The testimony of the prosecutrix in the first instance is in favor of the theory of the State. Then immediately she denies in toto the truthfulness of this statement, and states that appellant did not have carnal intercourse with her at any time. This leaves the record before us in such condition that we cannot permit the verdict to stand without other proof on the question of penetration, which is an absolutely essential requisite to all prosecutions for rape. (Blair v. State, 56 S. W. Rep. 622.)

Other cases of a like nature are cited in Tinker's case, 253 S. W. Rep. 531. Among them are Draper v. State, 57 S. W. Rep. 655; Galaviz v. State, 82 Texas Crim. Rep. 377; Smith v. State, 86 Texas Crim. Rep. 455.

If the testimony of Exa Burch had come before the jury free from question touching its voluntary nature, together with such corroborating testimony as the record portrays, it might be regarded as adequate to support the verdict. Her testimony, however, is not only rendered weak by the numerous contradictions, both under oath and otherwise, but its weakness is accentuated by the circumstances under which it was given. The procedure is the same in substance, though differing in some of its details, as that pursued in the case of Venable v. State,

84 Texas Crim. Rep. 355, in which it was held that the circumstances were indicative of the fact that the prosecuting witness, in giving the incriminative testimony, was influenced by threats and coercion.

It is difficult to comprehend what course counsel for appellant could have pursued in protecting his rights without disclosing to the jury the transactions in which the prosecutrix was examined by the presiding judge, and with such knowledge the conclusion of the jury that the judge held the opinion that the appellant was guilty seems inevitable. The law of our State contemplates as an incident of a fair trial that the judge presiding shall govern his conduct and that of the trial in such manner that his opinion of the merits of the case or the credibility of the witnesses shall not be made known to the jury. Kelly v. State, 33 Texas Crim. Rep. 31; English v. State, 85 Texas Crim. Rep. 450; Lagrone v. State, 84 Texas Crim. Rep. 614. Transgressions of this rule, when calculated to prejudice the case of the accused, have frequently been held to demand a reversal of the judgment. Simmons v. State, 55 Texas Crim. Rep. 446; McMahan v. State, 61 Texas Crim. Rep. 495; English v. State, supra.

There is complaint of the argument, but it cannot be considered for the reason that, as presented here, it does not appear that there was objection made to the argument or any effort to obviate its ill effects. The complaint of it appears to have been urged for the first time in the motion for new trial.

Taking into account the entire record, the opinion is expressed that a new trial should have been accorded the appellant.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*