No. 82-232

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

KEVIN D. HALL,

Defendant and Appellant.

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

Counsel of Record:

For Appellant:

Thomas E. Boland, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls,
Montana

Submitted on Briefs: March 17, 1983

Decided: May 5, 1983

Filed: MAY 5 - 1983

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Kevin Hall was charged with the crime of felony theft in the Eighth Judicial District, County of Cascade. An information, filed on January 11, 1982, alleged that Hall purposely or knowingly obtained control over a 1964 Chevrolet 3/4 ton pickup truck, knowing that the truck had been stolen by another, and purposely or knowingly used, concealed or abandoned the property in such a manner as to deprive the owner. These allegations, if supported, would establish commission of the offense of theft pursuant to section 45-6-301(3)(b), MCA. The defendant pled not guilty and the case was presented to a jury. The jury returned a verdict of guilty. The defendant was released on his own recognizance pending imposition of sentence. Prior to sentencing, defendant filed a motion for a new trial. Hearing on the motion was held May 7, 1982. The court denied the motion. Thereafter, on May 10, 1982, defendant was sentenced to ten years imprisonment as a persistent felony offender and five years imprisonment for the crime of theft. The five-year sentence was suspended. At the sentencing hearing, defendant made known his intentions to seek review in this Court, and in connection therewith made an oral motion to stay the execution of sentence pending appeal. The written motion and the notice of appeal were filed on that same day. The court denied the stay of execution, and defendant was sent to the state prison at Deer Lodge.

On August 31, 1982, the defendant filed a motion in this Court to stay the appeal and to remand the case to the District Court. Defendant's motion was based upon the claim of newly-discovered evidence. On September 3, 1982, this Court granted defendant's motion and the case was again before the District Court for a determination of whether a new trial should be granted because of the new evidence. On November 15, 1982, the District Court heard arguments and on November 30 entered findings of fact and conclusions of law and denied defendant's motion

for a new trial. In effect, the court ruled that there was no new evidence on which to award a new trial.

The defendant has raised three issues for our review; (1) whether there is substantial evidence to support the verdict of guilty, (2) whether the trial court erred by not granting a new trial, and (3) whether there was a denial of effective assistance of counsel at trial. We have carefully reviewed the record and find no merit in appellant's contentions, therefore the District Court's judgment and sentence is affirmed.

On or about November 13, 1980, a black-colored 1964 Chevrolet 3/4 ton pickup was reported stolen from Lucky Motors in Great Falls. The pickup was not seen again until more than a year later when Wayne Thody spotted it in the parking lot of a Great Falls restaurant. Thody had owned the truck prior to transferring it to Lucky Motors. Thody knew that Chuck Plant, the owner of Lucky Motors, had reported the truck stolen. Thody telephoned Plant who in turn telephoned the police department. Thody had the foresight to relay the license plate number, which was 2T-41247.

The police investigated. The license plate number belonged to a 1963 green GMC pickup truck owned by Mr. Fladstol, the defendant's stepfather. A police officer contacted Mrs. Fladstol concerning the license plate. Mrs. Fladstol showed the officer a vehicle registration, confirming that the number 2T-41247 was registered for a 1963 GMC pickup. Mrs. Fladstol also informed the officer that the GMC truck had recently been involved in an accident in which her son, the defendant, was the driver. The officer who investigated the accident noted that the license plate number of the GMC was 2T-41247; taken from the front license plate on the vehicle. The officer did not notice whether the vehicle had a rear license plate.

At this point, the police were confused. They had received a report that a stolen 1964 Chevrolet pickup was seen bearing the same license plate number as a 1963 GMC pickup which had recently

been involved in an accident. The police thought that Thody had incorrectly relayed the number on the stolen 1964 Chevrolet. However, the police would soon learn that no mistake was made.

Dave Richardson called the police and informed them that he thought his recently acquired 1964 black Chevrolet pickup truck was a stolen vehicle. About two weeks earlier, Richardson acquired the 1964 Chevrolet, without title or keys, from the defendant, Kevin Hall. With this information, the police contacted Chuck Plant who positively identified the truck as the one that was stolen from his used car lot. The police then impounded the vehicle.

When the police first viewed the stolen truck it had no license plates. However, when questioned about the matter, Richardson retrieved from the garbage a license plate with the number 2T-41247, which should have been on the 1963 GMC owned by Mr. Fladstol. Richardson had removed the plate at the urging of the defendant. Richardson testified at trial that when he got the truck from the defendant the plate was on the vehicle; apparently an arrangement whereby the truck could be driven on the streets.

According to the state's version of the facts, the defendant began to worry when he learned that the police had contacted his mother concerning the license plate. The defendant then contacted Richardson and told him that he should remove the license plate and throw it away, and that he should disguise the truck by painting it with gray primer paint because the truck was stolen. It was after learning these things that Richardson contacted the police.

The defendant admits that he transferred a pickup truck to Richardson in exchange for an air compressor and a wheel balancer. However, the defendant claims that the stolen 1964 Chevrolet was not the pickup involved. He claims that he gave Richardson another pickup, a 1962 Chevrolet half-ton. Concerning the license plate, defendant contends that Richardson must have

removed the plate from the 1963 GMC when it had been towed to a wrecking yard after the accident. He further admits that he contacted Richardson, not to tell him the truck was stolen, but to question him about the license plate that he suspected Richardson had taken.

The jury did not believe defendant's version of the facts and returned a verdict of guilty. Defendant argues that the verdict is not supported by substantial evidence. We disagree.

In determining whether substantial evidence exists to support the verdict, we will view the evidence in a light most favorable to the prevailing party. The evidence may be inherently weak and it may conflict with other evidence yet still be deemed substantial. Gunnels v. Hoyt (1981), ___ Mont. ___, 633 P.2d 1187, 38 St.Rep. 1492.

Appellant argues that the only evidence against him comes from the testimony of Dave Richardson, the person who was in possession of the stolen truck when the police began their investigation. Apparently, the appellant sees a relationship between the definition of substantial evidence and Richardson's questionable actions in this case. Richardson admitted during direct examination that he accepted the 1964 Chevrolet without a title and without keys. Also, upon learning that the vehicle did not have a VIN (vehicle identification number) plate, Richardson admitted that he installed a fake number plate and obtained a fake title to match. Nonetheless, Richardson maintained that he did not know the truck was stolen until after the defendant told him so.

Regardless of Richardson's actions, conclusions drawn about his veracity are questions for the jury. As we said in Gunnels, ___ Mont. at ___, 633 P.2d at 1191, 38 St.Rep. at 1495, where the record contains conflicting evidence, "the credibility and weight given to such conflicting evidence is the province of the jury and not this Court."

While Richardson's testimony was important to the state's

case, it cannot be said that it was the only evidence against defendant. Michael Barsotti testified that the defendant told him that the pickup was stolen and that he (Barsotti) should tell Richardson to get some paint to cover the original color. Barsotti also testified that the defendant said he had lent the license plate to Richardson so the truck could be driven on the streets.

We find substantial evidence to support the verdict of guilty.

Next, we consider whether the court erred in denying defendant's motion for a new trial. This issue concerns the first motion, not the motion made while arguing for newly-discovered evidence. Appellant's argument is two-fold. First, appellant claims that the court did not recognize its inherent discretion, and as a result, failed to exercise discretion. Second, appellant argues that the court erred by not specifying its reasons for denying the motion. These contentions will be dealt with in turn.

We find it difficult to imagine how the court could deny the motion without exercising discretion. Appellant cites the following comment by the District Court judge:

> "Well, I have some personal doubts in my own mind about this case. It is not up to me to decide the credibility of the witnesses, that is for the jury to decide. The testimony of one witness who is entitled to full credit is sufficient for the proof of any fact. And, of course, twelve people in the jury decided the credibility of the witnesses, so I can't see how I can turn around now and try to say their judgment of credibility was wrong. So, there-fore, I'm going to deny the Motion for new trial."

We do not see the above as a judicial denial of its own discretionary power, rather it shows that the court was well aware of the limits of its discretion. As we said in Lyndes v. Scofield (1979), 180 Mont. 177, 180, 589 P.2d 1000, 1002, "'the trial court's discretion is exhausted when it finds substantial evidence to support the verdict.' (citation omitted) Neither may a District Court grant a new trial only on the basis that it chose

to believe one line of testimony different from that which the jury believed." The judge's comments only reflect an awareness of the above principles.

Next, we consider appellant's contention that the court failed to specify reasons for denial of the motion. Appellant assumes that such reasons are required. We are cited to State v. Williams (1981), _ Mont. _ , 632 P.2d 328, 38 St.Rep. 1253, for the proposition that when a trial court denies a motion for new trial, it must state its reasons therefore. Appellant misreads the case. In Williams, we reviewed an order granting the defendant a new trial. In granting the new trial, the court did not specify its reasons. We noted that section 46-16-702, MCA, "does not require that the District Court expressly state its reasons for taking whatever action it deems appropriate regarding [motions for new trial]." However, we held that the mandates of Rule 59(f), M.R.Civ.P. are applicable to motions for new trial in criminal actions. Rule 59(f), M.R.Civ.P. requires that "[a]ny order of the court granting a new trial, shall specify the grounds therefor with sufficient particularity as to apprise the parties and the appellate Court of the rationale underlying the ruling, and this may be done in the body of the order, or in an attached opinion." Williams holds that reasons must be stated when granting a new trial, it does not hold as such when a court denies a motion for new trial.

Even if appellant's reading of Williams were correct, his argument would not persuade this Court. The district judge did state his reasons for denial of the motion. It is evident from the judge's comments cited above that he deferred to the jury as the finder of fact; in effect, ruling that substantial evidence existed to support the verdict.

Next, we address appellant's assertion that he was denied effective assistance of counsel at the trial level. Appellant alleges numerous instances of error, conceding that no single instance in and of itself would warrant reversal. However,

appellant asks this Court to consider the cumulative effect of the many "errors and omissions."

We have recognized that the claim of ineffective assistance of counsel may be predicated upon the cumulative effect of representation. In State v. McElveen (1975), 168 Mont. 500, 509, 544 P.2d 820, 824, we stated: "'[a]dequate representation in a criminal proceeding is the cumulative act of affording the defendant an adequate defense.'" (citing Smotherman v. Beto (1967), 276 F.Supp. 579, 586). In support of his argument, appellant alleges more than thirty instances of error. We have carefully reviewed the record and conclude that appellant was effectively represented by trial counsel. In reviewing the record, we have been mindful of the standard adopted by this Court in State v. Rose (1980), ___ Mont. _ ___, ___ ___, 608 P.2d 1074, 1081, 37 St.Rep. 642, 649-50; "'[p]ersons accused of crime are entitled to the effective assistance of counsel acting within the range of competence demanded of attorneys in criminal cases.'"

Appellant's claim is groundless. We are disturbed and irritated by what is an unfounded attack on the competence of trial counsel. It is obvious that appellate counsel scoured the record in an effort to make his cumulative total as high as possible; apparently not caring whether his arguments had substance. In several instances the record is misstated. Sentences are taken out of context. Many of the alleged errors are not errors at all, and if there are instances of error, they are trivial.

Appellant seems to conclude that the basis of all error was inadequate preparation. As illustrative of this point, we are cited to a portion of the transcript where defense counsel supposedly tells the jury in closing argument that "he did not meet with Defendant's witnesses and prepare them for this trial . . ." In other words, appellant would have us believe that defense counsel failed to interview his own witnesses prior to trial, and even admitted it to the jury. This is not so. Defense counsel was attempting to explain inconsistencies in the testimony of his

witnesses. He stated, "I didn't ask them to get together and straighten their stories out because I wanted them to also be honest, and they came and told you what they remembered." This is clearly not an admission of failure to interview witnesses. This is clearly an effort to mislead this Court.

In another instance of alleged error, appellant claims that trial counsel, in closing argument, stated that he did not know if the green GMC had a rear license plate at the time of the accident; this statement being contrary to defendant's assertion that there was a rear license plate on the vehicle. Appellant suggests that defense counsel cast doubt on his own client's statements. A reading of the transcript indicates that defense counsel made these remarks in reference to the testimony of the accident investigation officer, who testified that <u>he</u>, <u>the officer</u>, did not know if there was a rear license plate. In other words, defense counsel was merely relating the officer's testimony. Again, this is an effort to mislead this Court.

In another instance, appellant refers to a portion of the transcript where the "Trial Court reprimands the prosecutor for continually asking hearsay questions (in spite of no objection from the Defense Counsel) and the Court then lectures the Prosecutor on the definition of hearsay and the reasons for the hearsay rule." We see no hint of a reprimand from the court; rather, we see an explanation to the jury of the hearsay rule. Furthermore, we note that it was defense counsel's hearsay objection that prompted the court's comments. Appellant's reading of the transcript is strained.

Several other alleged errors indicate to us that appellant was striving to make the "error count" as high as possible. Appellant complains of three questions asked by the prosecutor of a police detective. Each of the three questions could have been objected to as hearsay, yet defense counsel made no objections. The questions focused on statements made by Dave Richardson concerning the fake VIN plate. Appellant contends that defense

counsel should not have let this testimony in. Yet, in another specification of alleged error, appellant criticizes trial counsel for a perceived failure to cross-examine Richardson concerning his questionable actions in obtaining the fake VIN plate. Appellant sees error both ways, first for letting the testimony in, and then for not getting it in.

Many other instances are not error at all or deal with a question of tactics. Appellant claims that defense counsel should have objected to the admission of several photographs of the stolen truck, yet he offers no possible grounds for the objection. Appellant fails to recognize that the photographs were useful; his witnesses viewed the photographs and testified that they did not represent the pickup that defendant transferred to Richardson. Also, in connection with the photographs; appellant claims that an excellent opportunity was missed to voir dire Chuck Plant concerning the identity of the vehicle since it had been missing for over a year and since it was only on Plant's lot for a couple of weeks. We do not see a missed opportunity; rather, we see wise restraint on the part of defense counsel. Plant testified that he recognized his truck in the photographs because of two distinctive features, homemade mudflaps and body damage on the door. A challenge of Plant on these points could have been detrimental to defendant, not beneficial.

Appellant lists several individuals who should have been called as witnesses by defense counsel. Supposedly, these individuals had additional and material information. It was partly on the basis of affidavits from these people that appellant moved for a new trial on the grounds of newly-discovered evidence. In denying a new trial, the court considered the information in these affidavits as either cumulative, not probative or not material.

Several other alleged errors are discussed by appellant, none of which deserve discussion. These include: error of defense counsel for reserving his opening statement until the close of

the state's case failure to object to prosecutorial comments during opening statement that defendant was guilty; several missed objections to leading questions and questions calling for hearsay; error of defense counsel for referring to the 1963 GMC as a 1964 model; failure of defense counsel to offer a jury instruction on defendant's "theory of the case," yet appellant does not suggest what might have been offered; failure of defense counsel to object to prosecutorial statements on closing argument vouching for the truthfulness of Dave Richardson; and failure of defense counsel to explain the concept of reasonable doubt to the jury.

Where ineffective assistance of counsel is claimed, the defendant must show error of counsel stemming from neglect or ignorance and resulting in prejudice to the defendant. State v. Morigeau (1982), ___ Mont. ___, 656 P.2d 185, 39 St.Rep. 2311. We see no error, singly or cumulatively, which prejudiced defendant.

The assertion of ineffective assistance of counsel is a serious charge. An attorney's reputation is his most prized possession. Appellate counsel might have conducted the trial differently, however,

> "the fact that some other lawyer . . . would have done differently . . . is no ground for branding the appointed attorney with the opprobrium of ineffectiveness, or infidelity, or incompetency . . . As no two men can be exactly alike in the practice of the profession, it is basically unreasonable to judge an attorney by what another would have done, or says he would have done, in the better light of hindsight." State v. Lopez (1980), ___ Mont. ___, ___, 605 P.2d 178, 180-81, 37 St.Rep. 36, 38-9. (Citing Williams v. Beto (5th Cir. 1965), 354 F.2d 698, 706.)

Our following comments are not intended to discourage valid and substantiated assertions of ineffective assistance of counsel. The right to effective assistance of counsel is guaranteed by the United States Constitution and this State's Constitution. State v. Rose, supra. An attorney would be remiss in his duties if he fails to act when he reasonably believes his client is

denied this right. However, in this case, appellate counsel attempted to manufacture an issue. His argument is not only frivolous, it is based in part on blatant misstatements of the record. Such actions will not be tolerated. Counsel is reminded of Disciplinary Rules 7-102(A)(2) and (5) which state:

> "In his representation of a client, a lawyer shall not:
>
> ". . .
>
> "(2) knowingly advance a claim or defense that is unwarranted under existing law;
>
> ". . .
>
> "(5) knowingly make a false statement of law or fact. Canons of Professional Ethics, 160 Mont. xxiii, xliv."

Finally, we consider a matter raised in appellant's reply brief. Appellant reasserts his ineffective assistance of counsel argument in view of an exhibit contained in respondent's brief. Appellant claims that exhibit 3 of respondent's brief is "proof positive that the Appellant, Kevin Hall, did not receive effective assistance of counsel at his trial and his conviction must be reversed."

Exhibit 3 is an affidavit signed by defense counsel, stating that "Kevin D. Hall advised affiant that Hall received the truck from one Pete Peterson." Furthermore, defense counsel states he traveled to the Montana State Prison to interview Peterson who was serving time for forgery. Apparently, Peterson told defense counsel that he knew nothing of the black 1964 Chevrolet.

Respondent included this exhibit to counter arguments by appellant that Peterson should have been called as a witness; and since he was not called, it helped illustrate ineffective assistance of counsel. Appellant urges that defense counsel violated the Canons of Professional Ethics by failing to preserve the confidences and secrets of a client. We refuse to consider the exhibit and the assertions of appellant. They are not relevant to the issues raised on appeal, nor are they part of the record. We will not tolerate attempts to introduce extraneous

information by attaching appendices to briefs. Farmers State Bank of Conrad v. Iverson and Bouma (1973), 162 Mont. 130, 509 P.2d 839.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices